### JOSEPH W. CORLIES & CO. *v.* TRUMAN ESTES.

#### *Guaranty. Contract. Usury.*

Where one guarantees the performance of a contract by a third party, he is liable to the party, to whom the guaranty is given, only in respect to such rights as that party has in virtue of a strict performance of his own duties under the specific provisions of the contract, and of the failure of the party, primarily liable, to perform his correlative duties under the like provisions. The party, to whom the guaranty is given, can not go beyond his duty under the contract, and then compel the guarantor to indemnify him for the consequences of his own departure from his duty, or of acts of voluntary grace extended to the party primarily liable.

Application of this principle to the facts of this case.

A contract, made in New York, between a commission merchant and a manufacturer, provided for the payment by the latter to the former, of a commission of one and a half per cent upon all pecuniary advances made upon the latter's consignments, in addition to the usual commission for sales, but the parties did not contemplate by this agreement the reservation of an unlawful rate of interest; *Held*, that under the laws of New York, by which the contract must be governed, this provision was not usurious, and that the commission merchant might recover of the other party the stipulated commission on his advances, in addition to the regular rate of interest.*

*NOTE. But *aliter*, probably, under the laws of Vermont; *Burton* v. *Blin*, 23 Vt. 151. REPORTER.

ASSUMPSIT. The case was referred, and the following is the substance of the referees' report :

" The plaintiffs, who are commission merchants in the city of New York, offered in evidence before the referees the written agreement upon which this action was brought, which was executed in New York city, and was as follows :

" This agreement, made the 3d day of May, 1853, between Joseph W. Corlies & Co. of the city of New York, parties of the first part ; Davis & Rider of Manlius, Onondaga County, in the State of New York, parties of the second part ; and Truman Estes of Bennington, in the State of Vermont, party of the third part ; an agreement having been mutually entered into between the several parties hereto, according to which the parties of the first part agree to send their cotton to the parties of the second part, and the parties of the second part agree to manufacture the same into sheetings, and to return the manufactured goods to the parties of the first part in the city of New York ; now this agreement witnesseth that in order to carry out the intent and purposes of the said arrangement, and in consideration of the covenants and agreements herein contained, with the further sum of one dollar in hand paid to the party of the first part, the receipt whereof is hereby acknowledged, the parties hereto do mutually covenant and agree in manner and form, as follows, to wit : the parties of the first part hereto agree to send from time to time, at the request of the parties of the second part, to the parties of the second part, certain quantities of cotton ; and the said parties of the second part agree to manufacture or cause the said cotton to be manufactured into sheetings with good despatch, and in a workmanlike manner, and to send the same as soon as possible to the store of the parties of the first part in the city of New York. The parties of the first part agree to pay to the parties of the second part for the manufacturing of said goods, at the rate of two and a quarter cents for every yard so manufactured ; and the parties of the second part agree to pay out of said sum of two and a quarter cents per yard, all expenses of transportation both of the cotton and the manufactured goods.

It is hereby mutually understood and agreed that the parties of the first part shall continue the entire and absolute owners of the

cotton and the manufactured goods, subject only to such charge of two and a quarter cents per yard. And the parties of the first part agree that upon the arrival of such manufactured goods at their store, the same shall be immediately charged upon their books to the parties of the second part, as goods purchased by them, the price to be the exact cost of the goods so delivered at the store of the parties of the first part, that is to say, the cost of the cotton and the said charge of two and a quarter cents per yard; and the parties of the second part agree that as soon as any such goods are so charged, they shall be immediately consigned, and all such goods are hereby consigned to the parties of the first part as commission merchants, to be sold on account of the parties of the second part, investing the parties of the first part with all the rights, liens and powers of commission merchants over and upon said goods, to hold them from the moment of such sale and immediate consignment, as security for all sums of money, or liabilities of any kind incurred by the parties of the first part on account of the parties of the second part, to retain out of the proceeds of the sale of such goods the consideration money for which they shall have been sold, which to this end shall be considered as an advance to the parties of the second part; to retain also the regular charges of a commission merchant, and also a commission of one and one-half per cent upon the cost of the cotton manufactured. And the party of the third part, in consideration of the covenants and agreements herein contained, and of the sum of one dollar to him in hand paid by the parties of the first part, for himself and for the parties of the second part, doth hereby covenant and ageee that the parties of the second part shall and will punctually perform their part of this agreement, faithfully and with all due diligence discharging their obligations in relation thereto; the party of the third part intending hereby to become the guarantor and surety of the parties of the second part, and to become responsible for their just and full performance of the several matters contained in this agreement. And the parties of the first part do covenant and agree that they will well and faithfully discharge their several duties as commission merchants, in regard to all matters herein contained, and that they will sell the said goods to the best of their ability, and faithfully

account to the parties of the second part for the proceeds thereof.

In witness whereof the parties have hereunto set their hands the day and year first above written.

(Signed)     DAVIS & RIDER,

by T. ESTES.

JOSEPH W. CORLIES & Co.

TRUMAN ESTES."

The plaintiffs, immediately after the execution of this agreement, commenced sending cotton under it to Davis & Rider at Manlius, New York, and continued so to do until April 23d, 1855, and sent them in all two hundred and one thousand three hundred and thirty-nine pounds, for which the plaintiffs paid twenty-one thousand four hundred and thirty-nine dollars and forty-seven cents ($21439.47). They also charged Davis & Rider one and one-half per cent commission on all their purchases of cotton, amounting to three hundred and nineteen dollars and seven cents, which commission was charged for advancing the money to pay for the cotton. They also charged interest on all their disbursements for cotton and freight, and their advances to Davis & Rider, from the time such disbursements were made, and credited them with interest in like manner on all the money received for the sales of cloth manufactured and sent the plaintiffs by Davis & Rider; and such was the custom of commission merchants in New York.

The plaintiffs received the last cotton cloth sent them by Snow & Estes (whose connection with the business is hereinafter stated) on July 31st, 1855, and on September 13th, 1855, the plaintiffs sent Davis & Rider a statement of their account with interest cast as above stated, at which time the balance of interest due the plaintiffs was twenty-seven hundred and two dollars and sixty-seven cents ($2702.67). During the course of the business they received in cotton cloth (including what was received from Snow & Estes) six hundred and fifty-eight thousand seventy-three and three-fourths yards, which they sold for thirty-eight thousand two hundred and eleven dollars and sixty eight cents ($38211.68), this sum being the net avails of the sale after deducting five per cent. commission for sale and guarantee, which it appeared was a reasonable charge.

It also appeared that the plaintiffs had paid for insurance on the cotton cloth sent them by Davis & Rider, for freight, and money advanced to them and paid for them, the

| | |
|---|---:|
| sum of | $17460.41 |
| Cost of cotton, | 21439.47 |
| Commission of one and a half per cent on cotton bought, | 319.07 |
| Balance interest to September 13, 1855, | 2702.67 |
| | $41921.62 |
| Net amount received by the plaintiffs from sales of cotton cloth, | 38211.68 |
| Leaving a balance September 13, 1855, of | $3709.94 |
| Add interest from September 13, 1853, to January 1st, 1859, at seven per cent, | 876.27 |
| | $4586.21 |

which sum the referees find to be due the plaintiffs from Davis & Rider, and also from the defendant to the plaintiff, if the court shall be of the opinion that the defendant, upon the foregoing facts, is liable to that extent upon the contract above set forth.

The referees further find that the plaintiffs during this transaction advanced to, or paid for, Davis & Rider, a larger sum than two and a quarter cents per yard upon the cotton cloth received by them, so that at the close of the business this excess amounted to twenty-six hundred and fifty-three dollars and seventy-six cents ($2653.76). It is the usual custom of commission merchants to make no advances on goods consigned to them until they were received.

The defendant claimed that he was not liable as guarantor for any advances or payments to Davis & Rider by the plaintiffs, exceeding the two and a quarter cents per yard upon the cloth received by them, but the plaintiffs claimed otherwise, and also insisted that they had a right to apply the whole avails of the sale of the cloth, first, in payment of the sums advanced to Davis & Rider, and secondly, upon the expense of the cotton. This question the referees refer to the court.

In case this excess of the advances over the stipulated compen-

sation per yard should be deducted, together with the interest thereon, from the balance of four thousand five hundred and eighty-six dollars and twenty-three cents ($4586.23), above reported, it will leave a balance due the plaintiff from the defendant of twelve hundred and fifty-six dollars and and eighty-one cents ($1256.81).

The defendant also claimed that the plaintiffs were not entitled to recover interest; and if the court should be of that opinion, then the referees find that there is due the plaintiffs from the defendant, twelve hundred and fifty-nine dollars and seventy-eight cents ($1259.78). And if the above mentioned excess of the advances ought also to be deducted, then we find there is nothing due the plaintiffs from the defendant, unless the court should hold that the plaintiff is entitled to recover upon the following facts:

It appeared that Davis & Rider actually made out of the cotton sent them by the plaintiffs fifty-two thousand one hundred and fifty-three yards of cloth more than they sent to the plaintiffs, and that they sold and received payment for this quantity themselves, without the knowledge or consent of the plaintiffs. This cloth was worth on an average at the time it was sold $3259.62
to which we find that interest should be cast from
    January 1st, 1855, to January 1st, 1859,    912.69

        making the sum of          $4172.31
And if the plaintiffs are entitled to a commission for
    sale, but not for guarantee (as they claim),
    on this cloth not sent to them, then two and a
    half per cent. thereon should be added, with
    interest from September 13th, 1855, in all,     100.49

        making the sum of          $4272.80
which sum we find the plaintiff is entitled to recover if the court consider this to be the proper method to ascertain the defendant's liability, unless there should be a deduction on account of the following facts:

It appeared that on the 1st of May 1855, Davis & Rider wrote the plaintiffs that they had stopped manufacturing, and had been succeeded in the factory by Snow & Estes, the latter of whom

was a son of the defendant, and in this letter they inquired if the plaintiffs were willing that Snow & Estes should run out the plaintiffs' stock then in the mill for Davis & Rider, and if they would permit Davis & Rider to draw on them in favor of Snow & Estes for the two and a quarter cents per yard, for manufacturing the plaintiffs' stock then in the mill. Snow & Estes took possession of the mill May 2d, 1855. The plaintiffs had previously forwarded Davis & Rider twelve bales of cotton, which, however, did not arrive at Manlius until May 3d, and Snow & Estes manufactured it, together with the plaintiffs' stock on hand on the 1st of May, into cloth. On May 8, 1855, the plaintiffs wrote Snow & Estes, in reply to Davis & Rider's letter of the 1st of May, that they might run out the stock in the mill for Davis & Rider, and that Davis & Rider might draw on them in favor of Snow & Estes for the stipulated compensation per yard for manufacturing such stock. Snow & Estes did not send the plaintiffs all the cloth so manufactured by them from the plaintiffs' cotton, but sold about half of it. The plaintiffs paid Snow & Estes two and a quarter cents per yard for manufacturing all the cloth sent by the plaintiffs, and credited Davis & Rider with the net avails of such cloth, after deducting the cost of manufacturing and the freight.

The defendant claimed that he was not liable for the cloth manufactured by Snow & Estes and not sent to the plaintiffs. But the referees find that Snow & Estes manufactured this cloth under Davis & Rider, and with the defendant's knowledge. But if the court are of the opinion that the defendant is not liable for the cloth retained by Snow & Estes, then we find that four hundred and sixty-seven dollars and sixty cents, being the commission of two and a quarter cents per yard upon the number of yards retained by them, and interest thereon, should be deducted from the amount which we otherwise find due.

The defendant also claimed that the contract was usurious, and on this point offered in evidence the statute of the State of New York, found in the Revised Statutes of that State, third edition, page 56, section 5. This question of usury we also refer to the court upon the facts already stated, and if the contract is usurious, then we find that the plaintiff is not entitled to recover

anything.    But we find that the parties in making the contract did not contemplate the reservation of any unlawful rate of interest.

The defendant introduced a letter written on the 24th of July, 1853, by the plaintiffs to him, in which was enclosed a statement of account.    This letter and statement made no claim for advances to Davis & Rider beyond the two and a quarter cents per yard for the amount of cloth manufactured, and the defendant claimed that by this letter, and one of the same date and similar tenor to Davis & Rider, the plaintiffs had put a construction upon the contract, as to the defendant's liability for advances to Davis & Rider, by which they were bound.    When this letter was written to the defendant, it did not appear that the plaintiffs knew that Davis & Rider had sold the plaintiffs' cloth, and it appeared that the plaintiffs were induced to make the proposition of settlement therein contained for the purpose of obtaining the business of selling the defendant's cloth as commission merchants."

Upon this report, by the consent of the parties, the county court, at the December Term, 1858, rendered judgment *pro forma* for the defendant, to which the plaintiff excepted.

*Robinson & Sibley,* and *A. P. Lyman,* for the plaintiffs.

*James L. Stark, Jr.* and *H. Canfield,* for the defendant.

BARRETT, J.    Davis & Rider entered into a special contract in writing with the plaintiffs to manufacture certain cotton to be furnished by the plaintiffs into cloth, and return the cloth to the plaintiffs, upon certain specified terms.    The defendant became a third party to said contract, and therein undertook for the faithful performance by Davis & Rider of their undertaking in said contract.

This action is brought by the plaintiffs against the defendant upon his guaranty of said performance by Davis & Rider, setting forth breaches of the contract by them,

It is not questioned that the defendant is bound by his contract of guaranty to make good the performance of the contract of Davis & Rider, according to its terms and legal effect,

Corlies & Co. *v.* Estes.

The cause was referred by rule of court, upon the special agreement of the parties, and the facts are before the court upon the report of the referees. The county court, *pro forma*, rendered judgment for the defendant. It is for this court to determine the correlative rights and liabilities of the parties upon the case as it is now before us.

By the terms of the contract Davis & Rider were to manufacture the cotton furnished by the plaintiffs into cloth, and deliver the cloth to the plaintiffs at their store in the city of New York; up to the time of which delivery the cotton and the cloth were to be the absolute property of the plaintiffs, subject to the claim of Davis & Rider of two and a quarter cents per yard for the manufacture thereof, and for the payment of transportation of the cotton from, and the cloth to, the city of New York. A large quantity of cotton was furnished by the plaintiffs, and made into cloth by Davis & Rider. But the case shows that a portion of the cloths made out of that cotton was not sent to the plaintiffs, but was retained and disposed of, and the pay received, by said Davis & Rider without the consent of the plaintiffs. The retention and disposal of this cloth is the ground of the claim for damage which the plaintiffs make in this suit.

There is no doubt that this was a breach of the contract for which the defendant would be liable to the plaintiffs on his guaranty; nor is there any doubt that, at least, they would be entitled to recover as damage, the price and expense of procuring the cotton which went into the cloth thus withheld and converted by Davis & Rider, with the interest upon that outlay.

But the plaintiffs insist that they are entitled to recover beyond that.

I. They claim that inasmuch as under the contract they were, on the receipt of the cloths at their store, to become commission merchants in respect to the cloths, and thereby to realize the emoluments of the business in that character, they are entitled to claim and recover the customary commission of five per cent. for the sale and guaranty of the cloths thus withheld and converted.

We think, for very obvious reasons, that this claim can not be maintained. In the first place, this commission is in the nature

.of compensation for the care, skill, labor and risk in making the sale with guaranty. Yet, by the very hypothesis, the care, skill, labor and risk were never exercised, performed and incurred.

In the next place, *non constat*, if the cloths had been all sent forward as per contract, the plaintiffs would have sold them, so as to be entitled to the customary commission. They might have been burned or otherwise destroyed or injured, so as to have prevented a sale. It is in this view that the matter of their being entitled to, and having lost the emoluments of the business, is too remote and contingent to entitle it to be the basis of a recovery of damage.

II. The plaintiffs claim to be allowed to recover for the balance of advances of the two and a quarter cents per yard on cloths over and above the cloths actually received by them. If the advances were made under the contract upon a fair interpretation of its terms and legal effect, then this claim is well founded, for it appears that a pretty large balance in this behalf exists.

It seems to us, upon an attentive consideration of the contract in this respect, that the plaintiffs were not bound to make any advances for the manufacture, except upon the cloths forwarded to and received by them, agreeably to the provisions of the contract. This being so, if they volunteered to make advances in anticipation of receiving the cloths, it was not in performance of the contract on their part, but was matter of grace to Davis & Rider, outside of the scope of the contract, and in reliance upon them personally.

By the terms of the contract, upon the cloths being received by the plaintiffs, they were to be charged over to, and to become the property of Davis & Rider, to remain with their avails in the hands of the plaintiffs, as security for all sums of money, or liabilities of any kind, incurred by the plaintiffs on account of Davis & Rider.

It is only fair and in accordance with well understood principles, to presume that the defendant entered into his contract of guarantee in view of all the terms and provisions of the contract, and that he was becoming liable to the plaintiffs, only in respect to such rights as they might have in virtue of a strict performance of their duties under the specific provisions of the contract, and

of the failure of Davis & Rider to perform their correlative duties to the plaintiffs under the like provisions of the contract. Now it is quite obvious that if advances had been made only according to the terms of the contract, the plaintiffs would have had constantly in hand, not only full security, but the very means of realizing a reimbursement of the advances thus made.

We think it will hardly do to hold that the plaintiffs may go beyond their duty under the contract, and then compel a guarantor to indemnify them for acts of voluntary grace extended to the primary party. The delicacy and sensitiveness of the law in respect to persons sustaining the relations of the defendant in this suit, have become proverbial in judicial administration, and in the books.

The justness of this view, in its application to this case, is strongly enforced by the acts of the plaintiffs, which seem to subject this claim to the suspicion of being an afterthought at variance not only with the terms and effect of the contract, but also with the plaintiffs' understanding of the contract.

The letter of the plaintiffs of July 28, 1855, with the enclosed statement of account with Davis & Rider, can be regarded in no other light than a notice to the defendant of the character and extent of their claim against him upon his guaranty, and a demand on him for the payment of that claim.

It carries full evidence on its face when taken in connection with the contract, that it was not intended as a mere proposal for a settlement by pacific compromise of a disputed claim, but was intended as a statement and notice of the full claim that the plaintiffs regarded themselves as having under the contract. In this statement and notice there is no item predicated on the balance of advances, which is now urged as a legitimate claim against the defendant.

The defendant makes a point, that if the plaintiffs claim to be allowed interest on the money paid for the cotton, then the one and a half per cent provided for in the contract, renders the contract usurious and void under the laws of New York.

It is to be noticed that the report negates the idea of any corrupt intention. It is also to be noticed that this contract, being made and to be performed in the State of New York, is to be

construed and administered with reference to the laws of that State. It would seem, indeed, on the face of the transaction, that this reservation of one and a half per cent additional to the legitimate interest to which the plaintiffs are entitled upon the money advanced, partakes of the character of usury. Yet it must be borne in mind that in the State of New York, under the laws of that State, such a contract is not regarded by the courts of that State as usurious. We think this must be decisive against the objection urged.

The plaintiffs also claim to recover for the non-delivery of cloth manufactured by Snow & Estes, as the successors of Davis & Rider, out of cotton forwarded to Davis & Rider under the contract in question.

This is resisted on the ground that it was an arrangement which the plaintiffs entered into outside the contract. We think, however, upon the facts found, that it was in effect but an arrangement for a continued performance of the contract by Davis & Rider. The cotton had already been forwarded, before the plaintiffs had any knowledge or notice that Davis & Rider had ceased business. It had been forwarded agreeably to the terms of the contract, at the request of Davis & Rider, and they were under obligation by the contract to procure its manufacture. It was matter of indifference to the plaintiffs who should do the manual work of making the cloth. There was no need for Davis & Rider to obtain the consent of the plaintiffs in this respect. The right of the plaintiffs would have been fully answered by the delivery of the cloths [made out of the cotton forwarded. The report shows that the work was done by Snow & Estes for Davis & Rider, and with the knowledge of the defendant. Davis & Rider thus recognizing their duty to procure the cotton to be manufactured, and undertaking to procure it to be done, left them and their guarantor under the same obligation to return to the plaintiffs the cloth made by Snow & Estes, as if it had been made by Davis & Rider themselves. It could make no difference with this obligation, whether they or their employees had made and withheld and converted the cloths.

Under the views thus presented, it results that the plaintiffs are entitled to recover the money paid and the commission of one

Corlies & Co. *v.* Estes.

and a half per cent, as stipulated in the contract, for the purchase of the cotton that was furnished and forwarded to, and not returned *in cloth* by Davis & Rider, including what was worked up by Snow & Estes, with the interest accruing thereupon. This result is the same as it would be if the computation were to be based upon the cloth, in the mode of estimating its value provided in the contract, viz: the cost of the cotton, including commission, and the two and a quarter per cent for the manufacture of it into cloth.

It is obvious that the purpose of the plaintiffs in making the contract was, that they should be reimbursed for the cotton, and enjoy the emoluments of the sale of the cloths as commission merchants. Those emoluments, as to the cloths not returned, being too contingent and uncertain to predicate a computation of their amount, or of the damages resulting from their loss, are excluded; and thus, of course, the plaintiffs' damages are to be measured by the cost of the cotton and the stipulated commission for the purchase of it.

The cloths that were forwarded to and received by the plaintiffs, reimbursed and satisfied to them the costs, charges and commissions to which the plaintiffs were entitled under the contract, in respect to the cotton out of which said cloths were made, as well as for the advance of two and a quarter cents per yard, authorized by the contract for their manufacture and transportation.

The judgment is reversed, and judgment rendered for the plaintiff for $————————, to be ascertained from the report, in conformity with the opinion above given.