ROCKVILLE NATIONAL BANK *vs.* ROYAL G. HOLT.

Hartford Dist., March T., 1890. ANDREWS, C. J., CARPENTER, SEY-
MOUR, FENN and THAYER, Js.

The plaintiff, who held the notes of an insolvent corporation indorsed by the defendant, signed a composition deed by which the creditors assigned their claims to a reorganizing committee and agreed to take in payment the stock of the reorganized company, to be issued to them by the committee. When the plaintiff signed the agreement he added to his signature the following:—"reserving all rights against R. G. H." (the defendant.) Held that, with this qualification, the signing of the agreement did not discharge the defendant from his liability as surety.

And where a surety has knowledge of and assents to the giving of time to the principal debtor or the making of a new contract with him, he is not discharged.

In this case the defendant, who was himself a creditor of the insolvent corporation, signed the composition deed before the plaintiff. It was necessary to the carrying out of the object intended that the other creditors should also sign. Held that the defendant's signing the agreement might be regarded as a request to the others to sign also, and that the plaintiff's subscription was to be regarded as made with the defendant's knowledge and assent.

[Argued March 11th—decided April 15th, 1890.]

ACTION against the defendant as indorser of sundry notes and bills of exchange; brought to the Superior Court in Tolland County, and tried to the court before *Torrance, J.* Facts found and judgment rendered for the plaintiff, and

appeal by the defendant. The case is fully stated in the opinion.

*C. Phelps*, for the appellant.

The Smith Rubber Company, being indebted to the defendant, gave him three promissory notes, and accepted three bills of exchange, representing the indebtedness, all of which were payable to the order of the defendant and indorsed by him, and were discounted by the plaintiff. Subsequently the Rubber Company failed, owing the defendant the above debt, and he soon afterwards made an assignment in insolvency and his estate paid fifty cents and two mills on a dollar. The defendant afterwards becoming possessed of certain property, the plaintiff attached it in a suit to recover the balance due. During the pendency of the suit the plaintiff signed a composition agreement which contained the following language:—"The parties of the first and fifth parts" (including the plaintiff) "shall upon demand transfer, and shall be deemed to have transferred, to the reorganizing committee, hereinafter appointed, all claims, demands, suits and proceedings against the Smith Rubber Co." To this committee therefore the plaintiff, for value, transferred its claim, for the recovery of which this suit is brought, but added after its signature the following: "Reserving all rights against R. G. Holt, and against his estate, or assignee for the benefit of creditors."

The Smith Rubber Co. and the defendant hold the relation of principal and surety. *Murray* v. *Judah*, 6 Cowen, 484. A surety cannot be charged beyond the positive obligation of his contract. *Walsh* v. *Bailie*, 10 Johns., 180; *Lanuse* v. *Barker*, id., 312. "A surety has the right to stand upon the very terms of his contract, and any act or omission which alters such terms, without his consent, will extinguish his liability, even though such alteration be for his benefit. It destroys the identity of the contract and it ceases to be the contract to which he became a party." 5 Wait's Actions & Defenses, 231, and authorities there cited. Any collateral contract ceases when the principal

contract terminates. *Chapman* v. *Collins*, 12 Cush., 163; *Wright* v. *Russel*, 3 Wils., 530; *Dry* v. *Davy*, 10 Adol. & El., 30. The contract of a surety is a collateral engagement for another, as distinguished from an original and direct agreement for the party's own act. Chitty on Cont., 499.

Applying these principles to the case at bar, the principal cannot change his base, without the knowledge and consent of the surety, without the surety becoming thereby discharged. It is a familiar rule that the discharge of the principal is in law a discharge of the surety. Does the fact of a reservation appended to the plaintiff's signature, and which does not appear in the body of the instrument, take the case out of the rule? On this point the case of "*Farmers' Bank* v. *Blair*," 44 Barb., 642, speaks as follows :—"An action being brought by the indorser of promissory notes against two persons as joint makers, and two others, B. and M., as joint indorsers thereof, one of the makers died; whereupon a compromise was entered into between the plaintiff on the one part and the surviving maker and M., one of the joint indorsers, on the other, by which the plaintiff, on being paid one half the amount of the notes, exonerated and discharged the surviving maker and M. from all liability upon the notes in suit. Held that this discharge of the surviving maker of the notes operated as a discharge of B. the indorser; and that he might set up such a discharge as a defense to the action." And further—"As between the maker and indorser of a promissory note, their relation for most purposes is that of principal and surety. And if the holder, without the privity and consent of the indorser, by a valid contract with the maker, discharges the latter, the indorser is also discharged. And this notwithstanding it is declared in the release that the discharge of the maker therein provided for is not intended, nor shall be used, to impair the rights of the holder against the other parties to the note."

As evidenced by the composition agreement the reorganizing committee bought and owned the very causes of action upon which the plaintiff's claim was predicated, and

apparently for full value. On the claim so purchased the committee could at once proceed against the defendant, and in this very suit could have successfully asked to be made a party plaintiff. The reservation appended to the signature adds nothing and subtracts nothing, for it is entirely inconsistent with the burden, object and purport of the instrument signed. An assignment carries with it all of the incidents of the thing assigned. As for instance in a mortgage, "the debt is the principal, and the security the incident; the assignment of the principal draws after it the incident." *Green* v. *Hart*, 1 Johns., 580. When a debt is sold or assigned, the very object and purpose of the surety vanishes. It operates upon the surety in the same manner as if the debt were extinguished. See *Webb* v. *Hewitt*, 3 Kay & Johns., 438. The head note declares that "a creditor upon giving time to his principal debtor may reserve his rights against the surety, and this without communicating the arrangement to the surety. But when the creditor gives a release to the debtor he cannot reserve any right against the surety, because the debt is gone at law."

But there is a further principle involved in the case at bar, for in equity there has been an adjustment of the debt and an arrangement of the claim. The plaintiff is to receive for its claim a certain proportion of preferred and common stock of a new company, formed after capitalizing the debts of the old one, based upon the full amount of the plaintiff's claim. For each dollar of indebtedness it receives a dollar's worth of stock; some of it preferred, and some of it common. "An adjustment between the debtor and creditor, and an arrangement that the sum agreed upon shall be paid in instalments, has the effect to discharge the sureties." 5 Wait's Actions & Defenses, 231. See also *Steele* v. *Boyd*, 6 Leigh, 547. If the defendant is still holden in the same manner as before the adjustment, transfer and assignment, then is he "subjected to the demands of two different creditors instead of one," which the law has never contemplated. 17 Atlantic Reporter, 1048. A court of equity should restrain the plaintiff from pursuing a claim

against the defendant which has already been adjusted and which the plaintiff does not own. If the stock taken by the plaintiff for its debt be worth par, the bank is already overpaid, for it received 50 and 2-10 per cent from the defendant's estate. If it be worth but half its par value, still has the bank received more than its claim.

*C. E. Gross*, for the appellee.

ANDREWS, C. J. The L. B. Smith Rubber Company, a corporation doing business at Setauket, New York, being indebted to the defendant gave him three promissory notes, and accepted three bills of exchange, representing such indebtedness and aggregating in the whole something more than five thousand dollars. All of the notes and bills were payable to the order of the defendant, were by him indorsed, and at his request were discounted for his benefit by the plaintiff. Shortly thereafter the Rubber Company failed. That failure compelled the defendant to go into insolvency. The plaintiff presented its claim against his insolvent estate and received a dividend thereon. The defendant having since that time acquired other property, the plaintiff brought this suit and attached such other property. Since the bringing of this suit the plaintiff, in common with nearly all the creditors of the L. B. Smith Rubber Company, including the defendant, signed an agreement which is fully set out in the finding, but which it is not necessary here to repeat. For the purposes of the present discussion it is sufficient to say that that agreement provided, among various other things, that the creditors of the Rubber Company should assign their claims to certain persons called a reorganizing committee, and that this committee should proceed to reorganize the company and should issue to each of the several creditors in payment for their respective claims the stock of the reorganized company, which the creditors agreed to accept. When the plaintiff signed the agreement it added to its signature :—" reserving all rights against R. G. Holt, or against his estate, or assignee for the benefit of his credi-

tors." These words did not appear in the body of the instrument.

The defendant insists that by signing the agreement the plaintiff assigned all its claim against the L. B. Smith Rubber Company to the reorganizing committee, and that as he is liable to the plaintiff only as a surety for that company the assignment of the claim against the principal debtor discharges him.

That an unqualified release of a principal debtor will be a discharge also of the surety is admittedly good law. The plaintiff, however, claims that by the reservation appended to its signature it is not affected by that rule. The defendant cites two cases, either of which by its terms fully supports his contention. But the authority of each of these cases is greatly weakened, if not entirely overturned, by later decisions in the same jurisdiction. *Webb* v. *Hewitt*, 3 Kay & Johnson, 438, is substantially overruled by *Green* v. *Wynn*, L. R., 7 Eq. Cas., 31, and L. R., 4 Ch. Appeals, 204; and *Farmers Bank* v. *Blair*, 44 Barbour, 641, by *Morgan* v. *Smith*, 70 N. York, 545, *Colvo* v. *Davies*, 73 N. York, 211, *Nat. Bank* v. *Bigler*, 83 N. York, 51, and *Shutts* v. *Fingar*, 100 N. York, 539.

It is stated in De Colyar on Principal & Surety, 418, that such a reservation as was made by the plaintiff prevents there being any discharge of the surety, and gives as authority *Kearsley* v. *Cole*, 16 Mees. & Wels., 128; *Wyke* v. *Rogers*, 1 De G. M. & G., 408; *Boaler* v. *Mayor*, 19 C. B. N. S., 76, 84; *Owen* v. *Homan*, 4 H. L. Cases, 997; and *Close* v. *Close*, 4 De G. M. & G., 176. See also *Tobey* v. *Ellis*, 114 Mass., 120; *Kenworthy* v. *Sawyer*, 125 id., 28; *Bank* v. *Lineberger*, 83 Nor. Car., 454; *Morse* v. *Huntington*, 40 Verm., 493; *Hagey* v. *Hill*, 75 Penn. St., 108; *Mueller* v. *Dobschuetz*, 89 Ill., 176. The weight of authority seems to us to be strongly adverse to the defendant's claim.

There is another view of the case which makes it clear that the defendant is not entitled to a discharge by reason of the plaintiff's signing the agreement. Whenever a creditor gives time to, or makes a new contract with, the princi-

pal debtor, of which new contract the surety has knowledge and to which he assents, he is not thereby discharged. *Adams* v. *Way*, 32 Conn., 160; *Corlies* v. *Estes*, 31 Verm., 653; *Smith* v. *Winter*, 4 Mees. & Wels., 454. The composition agreement was beneficial to all the creditors of the L. B. Smith Rubber Co., provided all entered into it. The defendant and his trustee in insolvency signed it before the plaintiff did. It was obviously for the advantage of each that the other should sign. Without some such arrangement neither could ever hope for any payment from that company. With such an arrangement there was a chance that they might both be paid in full. The plaintiff signed with the knowledge that the defendant and his trustee had previously signed. A composition deed implies not only an agreement of the debtor with each of his creditors, but also an agreement by each creditor with each of the others. The signing of such a deed by any creditor is in some measure a request to all the others to sign also. The circumstances of this case show pretty clearly that the defendant knew of and assented to the act of the plaintiff in signing the agreement.

There is no error in the judgment complained of.

In this opinion the other judges concurred.