## PEUGH v. MOODY et al.†

(Court of Civil Appeals of Texas. Amarillo. Feb. 10, 1912. Rehearing Denied March 8, 1912.)

1. APPEAL AND ERROR (§ 536*)—REQUISITES.

A bill of exceptions is not sufficient, where it contains no order that it be filed or become part of the record, and where it does not clearly appear that it was presented or requested to be approved by the appellant.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2402, 2403; Dec. Dig. § 536.*]

2. APPEAL AND ERROR (§ 728*)—CONTENTS.

Where a bill of exceptions alleged error in the exclusion of evidence, some of which was admissible and some not, the good not having been separated from the bad by separate bills of exception, an entire assignment, based thereon, would be overruled.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3010–3012; Dec. Dig. § 728.*]

3. APPEAL AND ERROR (§ 1056*)—EXCLUSION OF EVIDENCE—PREJUDICE.

The erroneous exclusion of evidence was not prejudicial, where its admission could not have changed the legal conclusion reached on consideration of the entire case.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4187–4193, 4207; Dec. Dig. § 1056.*]

4. PRINCIPAL AND SURETY (§ 128*)—DISCHARGE OF PRINCIPAL—EFFECT AS TO SURETY.

Where defendant, who was the principal stockholder in a corporation, indorsed a note as the corporation's surety for its benefit, and thereafter defendant participated in the making of a contract, by which a large part of the corporation's indebtedness was compromised by a payment of 50 per cent., and knew that the holder of the note intended to retain its claim against him as surety for the balance due thereon, the discharge of the corporation did not relieve defendant from his liability as surety.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 356–365; Dec. Dig. § 128.*]

Appeal from District Court, Lipscomb County; F. P. Greever, Judge.

Action by Robert Moody and others against W. F. Peugh and another. Judgment for plaintiffs, and defendant Peugh appeals. Affirmed.

E. C. Gray, for appellant. H. E. Hoover, for appellees.

GRAHAM, C. J. This appeal is from a money judgment rendered by the district court of Lipscomb county in favor of appellees and against appellant, the amount of judgment representing the balance due on a certain promissory note executed by the W. F. Peugh Mercantile Company, a private trading corporation, as principal, and W. F. Peugh as its surety, and payable on its face to J. P. Hatfield, as cashier of the First National Bank of Higgins, Tex.; the note bearing date June 19, 1909, and being due on its face 120 days after date.

The record on this appeal shows, without any conflict in the evidence, that on and prior to June 19, 1909, the W. F. Peugh Mercantile Company was a private trading corporation, with its place of business at Higgins, Tex., and that at that time W. F. Peugh owned a very large portion of its stock and was one of the directors therein, as well as its president and general manager; that the company's financial affairs were such on that date as to require the borrowing of money for its benefit, and that W. F. Peugh applied to the First National Bank of Higgins for a loan, which was made only on condition that W. F. Peugh personally would sign the note as surety and see that the loan was repaid to the bank with

accumulated interest, and that the note sued on was executed by the W. F. Peugh Mercantile Company, acting through W. F. Peugh; he also signing the note personally; that the W. F. Peugh Mercantile Company received the benefit arising from said loan, but thereafter the mercantile company's financial condition became such that, with the consent of its officers and stockholders, as well as its creditors, its entire assets were placed in the hands of one of its creditors, to be wound up and proper distribution made among its creditors and stockholders; that after this trustee creditor had managed its affairs for a short time, and had made a distribution of 15 cents on the dollar to its creditors, with the consent of its creditors, its officers and stockholders, at a meeting held for that purpose, and attended and participated in by W. F. Peugh, at Higgins, Tex., the entire remainder of the assets of the W. F. Peugh Mercantile Company was turned over to W. F. Peugh and four of its creditors, under a contract by which said W. F. Peugh and said four creditors were to pay 50 cents on the dollar of the balance of the indebtedness of the mercantile company to all of its creditors, the creditors agreeing to accept that amount in full settlement of their claims as against said mercantile company; the agreement further being that from the assets of the mercantile company, after the creditors were thus settled with, the persons advancing the funds with which to pay the said 50 cents on the dollar should reimburse themselves for the money so advanced, with interest, and also should pay their claims against the company in full, and if anything remained it was to be distributed equally among the stockholders of the mercantile company.

Under this last arrangement, W. F. Peugh and the four creditors mentioned did raise the funds with which to pay in cash said 50 cents on the dollar of the remaining indebtedness of the company, and paid the same to its creditors, including the First National Bank of Higgins; the amount so paid said bank being credited on the note sued on. The record, we think, also shows that in raising the fund with which to pay said 50 per cent. W. F. Peugh and the four creditors raised a sum each in proportion to the amount of stock owned by them severally in the mercantile company; and the evidence tends to show that these five persons at this time owned and controlled all of the stock of the company.

After the agreements above referred to were made, and after 50 per cent. had been paid, the plaintiffs in this case, Robert Moody, Thomas F. Moody, J. P. Hatfield, and D. J. Young, sold their entire interest in the First National Bank of Higgins, and in the sale, and as part of it, acquired the exclusive ownership of the note sued on. Each of the plaintiffs knew at the time the other transactions hereinbefore mentioned were transpiring, and were stockholders and officers in said First National Bank of Higgins, and they individually acquired the ownership of said note after its maturity and with full notice of all the facts hereinbefore set out.

The suit below was filed by appellees against the W. F. Peugh Mercantile Company and W. F. Peugh individually; but at the conclusion of the introduction of the evidence the trial court gave a peremptory instruction for the W. F. Peugh Mercantile Company and against plaintiffs and in favor of plaintiffs as against W. F. Peugh, and verdict and judgment so rendered. W. F. Peugh alone appeals.

Appellant urges in this court several assignments of error, based on the refusal of the trial court to give special charges requested by him; but, under the view we have of the disposition that should be made of this appeal, they each become immaterial, and it therefore follows that the trial court did not err in failing to give them, and each of said assignments will be overruled.

While we do not believe the appellant's first assignment of error has been brought before us in such way as to require of us a consideration thereof on its merits, because, as we believe, the rules governing such matters in this court have not been complied with, we have concluded to dispose of it on its merits. The assignment is as follows: "The court erred in refusing to allow the defendant W. F. Peugh to testify that at no time during the making of the agreement with J. P. Hatfield, as cashier of the First National Bank, nor at any other time, or with any other person, did he offer or promise to pay the balance owing upon the note sued on in this case, in the event it was not fully collected from the principal, the Peugh Mercantile Company, and that he did not offer any inducement, by any promise of his, to induce said J. P. Hatfield, acting for the First National Bank, to accept the proposition made in settlement of said note by Peugh Mercantile Company; that there was no understanding whatever between him and the First National Bank, or the officers, that he would settle the balance owing upon the note sued upon, and that when he answered, on cross-examination, that it never entered his mind that he was not bound to pay the balance owing upon the note sued on that it was only a mental conclusion of his own that he arrived at by reason of being surety upon the note sued on, and that such conclusion was not arrived at from anything that was said or done at the time the agreement was made with J. P. Hatfield, acting for the First National Bank, and that he (W. F. Peugh) had refused to pay or secure the note sued upon. This was error, because said evidence was material to the issues involved in this suit, and said testimony should have been introduced in evidence and weighed with other testimony in

determining the liability of the defendant."

Three propositions are submitted under this assignment, as follows: (1) "When a contract is made to release the principal, and the principal is in effect discharged, it also releases the surety, unless there is an agreement with the surety to remain liable for the unpaid portion of the debt. It was therefore necessary and important that the testimony offered by defendant W. F. Peugh be admitted; and it was an abuse of discretion on the part of the court to exclude said testimony." (2) "When a witness, upon cross-examination, expresses an opinion of a conclusion that he had at some former time, it is proper that the witness be allowed to explain his reason for the conclusion; and it was error for the court to exclude the testimony offered on this point." (3) "When the principal on a note has been discharged by accord and satisfaction, it is necessary to prove an agreement on the part of the surety to pay the balance owing upon the note before said surety would be liable for the same."

The bill of exception on which this assignment is based is as follows: "Be it remembered, that on the trial of the above styled and numbered cause in this court, and after the evidence had been concluded and before the charge of the court was given to the jury, and before the argument of the counsel, the defendant in open court asked leave to put W. F. Peugh back on the stand as a witness in his own behalf, for the purpose of proving, and offered to prove, and the said W. F. Peugh would have testified, if he had been permitted by the court, that at no time during the making of the agreement with J. P. Hatfield, as cashier of the First National Bank of Higgins, nor at any other time, or with any other person, did he offer or promise to pay the balance of the note sued on in this case, in the event that the same was not fully collected from the principal, the Peugh Mercantile Company; nor he did not offer any inducement, by any promise of his, to induce said J. P. Hatfield, acting for the First National Bank, to accept the proposition made in settlement of said note; and said defendant W. F. Peugh, if he had been permitted to testify, would have stated that there was no understanding between him and the First National Bank, or the officers thereof, that he would settle the balance owing upon said note, provided and conditioned the First National Bank accepted settlement offered; said settlement being 50 per cent. of the balance owing at that time. The defendant W. F. Peugh offered to prove, and if permitted would have proven by defendant W. F. Peugh, that when he answered, on cross-examination by plaintiff, 'that he understood that he was bound to pay balance owing upon the note sued on' that it was only a mental conclusion of his own that he arrived at by reason of being a surety upon the note, and that such a conclusion was not arrived at from anything that was said or done at the time that the agreement was made with J. P. Hatfield, or the First National Bank, by which the said bank agreed to accept 50 per cent. of the amount then owing. The defendant W. F. Peugh offered to prove, and if permitted would have proven by said W. F. Peugh, that he had refused to pay or secure the balance owing upon the note sued upon. To the introduction of the evidence, plaintiff objected, because the witness was asked that question by him on cross-examination, and his statement was, 'he had no recollection of it.' Which objection was by the court sustained. To which action of the court, the defendant then and there in open court, excepted and herewith tenders his bill of exceptions, and asks that the same be approved and made a part of the record of said cause, which is accordingly done. F. P. Greever, Judge 31st Judicial Dist. of Texas."

[1, 2] It will be noted that there is no order by the court that this bill be filed or become a part of the record; nor is it made clearly to appear that it was presented or requested to be approved by appellant. As we view the matter, two questions are presented under this assignment: (1) Was it error to exclude the proffered evidence; and, if so, (2) did appellant sustain such injury as requires a reversal of this case? An inspection of the bill of exception shows that in the main the proffered testimony consists of conclusions of the witness, without any offer to give the facts on which such conclusions are based; and we hold that such conclusions, under these circumstances, were not admissible. There is also a statement, not a conclusion, to the effect that Peugh had refused to pay or secure the balance owing upon the note, which, we think, was not admissible, as being immaterial from the fact that the record shows the time he refers to was long after the contract under consideration. The bill does show, however, that as to some of the proffered testimony it would have been admissible, had it been offered, not in connection with the objectionable evidence. Appellant having failed to separate the objectionable from the admissible evidence contained in the bill by presenting those matters in separate bills to this court, and a part of the evidence, the exclusion of which is complained of, having been properly excluded, the entire assignment will be overruled. Jamison et al. v. Dooley, 34 Tex. Civ. App. 428, 79 S. W. 91; Bynum v. Hobbs, 56 Tex. Civ. App. 557, 121 S. W. 900.

If, however, the portion of the evidence contained in the bill of exception, and which should have been admitted as we view the record in its entirety, is considered, it could not have changed the legal conclusion that must be reached from a consideration of the entire evidence introduced on the trial, and therefore no reversible error is shown as a result of the exclusion of all the evidence set

out in the bill; and the assignment will, for this additional reason, be overruled.

[3, 4] The only remaining question necessary to be disposed of under the record is that presented under appellant's second assignment of error, which is as follows: "The court erred in his peremptory instructions to the jury, which read as follows: 'Robert Moody et al. v. W. F. Peugh et al. Charge of the Court. Gentlemen of the Jury: You are instructed in this case to return a verdict for plaintiffs and against the defendant W. F. Peugh for the note, interest, and attorney's fees sued for, less the amount of the Mayfield-Daniels notes and amount due as a credit for the overdraft paid'—because it in effect held the surety liable, when the cause had been dismissed as to the principal; because the plaintiff in the case acquired the note sued on after its maturity; because the First National Bank, while owner of the note, by an effectual and binding accord and satisfaction, released the principal debtor, and thereby released the surety."

Under this assignment, appellant submits three propositions, as follows: (1) "The charge of the court should conform to the evidence. It must be supported by the evidence, and the charge given is not supported by the evidence, and is contrary to the law and evidence, because the evidence was all to the effect that the principal was discharged by the voluntary act of the holder of the note, and the charge holds the defendant Peugh liable as a surety after the discharge of the principal by said voluntary act." (2) "A national bank is not by law classed as infants and lunatics, and is not by law precluded from the right to compromise, and has therefore a right to compromise past-due debts, and is bound by a compromise, and, should it desire to repudiate the contract of an accord and satisfaction, it must tender back the money received; and a bank is chargeable with the knowledge of its officers and bound by their acts." (3) "An accord and satisfaction is liable and binding upon all those who make the agreement, when there is a consideration for the same, even though the consideration be slight. In this case, the consideration was valuable and beneficial to the holders of the note sued on, to wit, to the First National Bank and the plaintiffs, because the plaintiffs received a greater per cent. on their indebtedness than they otherwise would have. Said plaintiffs at the time of the compromise were directors and stockholders in the First National Bank, and thereby received the benefits of the accord and satisfaction and payment made thereunder."

We are inclined to the opinion that we should not consider this assignment of error, nor either proposition thereunder submitted, for the reasons that rules 29, 30, 31, and 32 (67 S. W. xv, xvi) have each been violated in the preparation of the assignment of error, as well as the propositions thereunder; but we have concluded to do so, as follows: There can be no question but that, where the principal is released without the consent of the surety, the surety is also released; but, if the release of the principal is with the consent of the surety, under circumstances showing that the surety advised the making of the contract resulting in the release of the principal, and further showing that such release of the principal would inure to the benefit of the surety, we are sure that the release of the surety would not follow, unless it be affirmatively shown that it was intended by the parties to and under the contract to release him.

In this case, we find, as a basis for the disposition we shall make of this assignment, that the record shows conclusively the following facts: At the time the contract was made that released the principal, the W. F. Peugh Mercantile Company, no officer of the bank, nor the bank itself, the then owner of the note, intended to release surety; but, on the contrary, the bank and its officers who participated in making said contract intended to retain its claim against the surety for the balance unpaid on the note, and the bank and its officers so understood the contract as made; and we further find as a fact that the surety himself also understood the contract at the time it was made, and knew that the bank and its officers so understood it.

Believing that there was no conflict in the evidence on the facts above found and as introduced on the trial, as shown by the entire statement of facts, and believing that it was the intention of all said parties to release the principal and leave the surety bound for the unpaid portion of the debt sued on, there was no material issue of fact to be submitted to the jury on the trial below, and the trial court therefore correctly gave the peremptory instruction complained of. Merchants' National Bank v. McAnulty, 31 S. W. 1091; Rockville Bank v. Holt, 58 Conn. 526, 20 Atl. 669, 18 Am. St. Rep. 293; Pingrey on Suretyship, page 85.

Finding no reversible error in the record, and believing the judgment rendered below is sustained by justice, as well as law, it will, in all things, be affirmed; and it is so ordered.