The **HARDAWAY COMPANY**, Plaintiff-counter-defendant-Appellant,

v.

**AMWEST SURETY INSURANCE COMPANY**, Defendant-counter-claimant-Appellee.

No. 92–8153.

United States Court of Appeals, Eleventh Circuit.

March 31, 1993.

Steven Elliot Scheer, Savannah, GA, Geoffrey Johnson and Frederick P. Alimonti, Saddle River, NJ, for appellant.

Roy E. Paul, Bouhan Williams & Levy, Savannah, GA, David Jason Merbaum, and Jefferson B. Slagle, Thompson & Slagle, Norcross, GA, for appellee.

Before ANDERSON, DUBINA and BLACK, Circuit Judges.

DUBINA, Circuit Judge:

In this construction case involving the bonded performance of a now defunct subcontractor, B & F Contractors, Inc. ("B & F"), the plaintiff prime contractor, Harda-

way Company ("Hardaway"), appeals the district court's order granting summary judgment to the defendant surety company, Amwest Surety Insurance Company ("Amwest"). The district court found that Hardaway's release of its claims against B & F terminated Hardaway's rights against Amwest as a matter of state law, despite the explicit reservation of those rights in the release agreement between Hardaway and B & F.

The district court determined that under Georgia law a surety is discharged when the principal debtor is discharged unless (1) the discharging creditor reserves all rights against the surety and (2) the discharge of the principal debtor is done with the knowledge and consent of the surety. Since Hardaway explicitly reserved its rights to proceed against Amwest when releasing B & F, the first requirement was not in issue. Regarding the second requirement, the district court concluded that Amwest had not consented to Hardaway's release of B & F, and thus found that Amwest was discharged.

As in the district court, the first requirement is not at issue in this appeal. Regarding the second requirement, we must first determine whether Amwest consented to the release, because if Amwest consented we would have no need to reach the issue of whether consent is required. Because we agree with the district court that Amwest did not consent to the release, we must determine whether Georgia law requires consent. Since there is confusion in Georgia law regarding this issue, we certify the question to the Supreme Court of Georgia.

## I. STATEMENT OF THE FACTS

This case concerns the construction of a public works project for the Georgia Department of Transportation ("DOT"). Hardaway as prime contractor secured B &

F as subcontractor to perform earthmoving services needed to prepare the site. Amwest guaranteed B & F's performance.

When B & F encountered difficulty in paying vendors, it demanded payment from Hardaway for additional costs incurred. Pursuant to its interpretation of a clause in the subcontract, Hardaway referred the claim to the DOT and refused to make payment on its own. When B & F continued experiencing difficulty in performing, Hardaway notified B & F that it was in default and demanded that Amwest fulfill the subcontract. Under an agreement with Hardaway (the "Takeover and Hold Harmless Agreement"), Amwest took over performance of the subcontract and agreed to finish the job, using B & F's own resources to do so.

B & F then commenced a civil action against Hardaway in South Carolina state court for payment of the additional cost overruns. After being removed to federal court, that litigation was settled by an agreement between Hardaway and B & F to which Amwest was not a party. Paragraph six of the settlement agreement purported to "release" Hardaway's claims against B & F for its default under the subcontract, while preserving any warranty claims against B & F and specifically providing that Hardaway retained its rights against Amwest.[1]

Alleging diversity of citizenship as the basis for federal jurisdiction, Hardaway then sued Amwest in the United States District Court for the Southern District of Georgia to recover damages for B & F's default. Amwest defended that Hardaway's release of its claims against B & F also terminated its rights against the surety, notwithstanding the parties' attempt to preserve those rights. In the alternative, Amwest counterclaimed for the cost overruns, to which it claimed to be entitled as

---

1. All parties further agree to release the others from any and all claims, including those for delay and impact costs arising out of the subcontract. This paragraph in no manner is intended to release B & F from any warranty provision ... nor is this agreement to be construed as a waiver by Hardaway of any of

Hardaway's rights or remedies against Amwest. Hardaway specifically retains all of its rights and remedies with regard to B & F's surety, Amwest....
(Liquidating Agreement ¶ 6 (Mar. 1990); R1–14–Exh. B at 8–9).

subrogee of B & F. The district court agreed with Amwest, granted summary judgment to Amwest, denied Hardaway's cross-motion for summary judgment, and dismissed the alternative counterclaim pursuant to Amwest's voluntary withdrawal. This appeal followed.

## II. ANALYSIS

### A. DID AMWEST CONSENT TO HARDAWAY'S RELEASE OF B & F?

■ The district court determined that since the language of the surety contract does not explicitly mention release of the principal or diminishment of security as a permissible modification, Amwest's consent to modifications in the surety contract was not advance consent to Hardaway's discharge of B & F. We review the district court's interpretation of state law de novo. *Salve Regina College v. Russell*, —— U.S. ——, —— - ——, 111 S.Ct. 1217, 1221–25, 113 L.Ed.2d 190 (1991); *Forbus v. Sears Roebuck & Co.*, 958 F.2d 1036, 1041 (11th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 412, 121 L.Ed.2d 336 (1992).

■ Hardaway argues that it has the power to modify the subcontract and that this power includes the power to release B & F. Thus, it argues that the surety contract constitutes Amwest's consent to Hardaway's release of B & F. The surety contract provides that

> [the] terms and conditions of said Principal Contract [the subcontract between Hardaway and B & F] may be changed, amended, altered, or modified at any time, without notice to the Surety and without procuring the consent, approval or waiver of the Surety, and any such change, amendment, alteration or modification shall not release the Surety from liability under this bond.

■ Both parties agree that a surety may consent in advance to conduct which would otherwise discharge him, *Regan v. United States Small Business Admin.*, 926 F.2d 1078, 1082 (11th Cir.1991) (applying Georgia law), but Amwest argues that the common usage of the word "modify" means something different from "release"

and that the contract should be interpreted according to its plain meaning. The district court agreed with Amwest, finding that modification means "a change, alteration or amendment that 'introduces new elements into the details, or cancels some of them, but leaves the general purpose and effect of the subject matter intact.'" (Order at 10 (quoting Black's Law Dictionary 905 (5th ed. 1979)). *Cf. Delta Diversified, Inc. v. Citizens & Southern Nat'l Bank*, 171 Ga.App. 625, 320 S.E.2d 767, 772 (1984) (holding that surety consented to subordination of collateral in advance where contract expressly provided that modification *or* release of principal's obligations would not discharge surety).

In response, Hardaway points to other provisions in the subcontract itself, incorporated into the surety bond by reference, which already granted Hardaway the right to make the kind of changes that the district court held were encompassed by the term "modify." Hardaway premises its argument on the rule that nothing permitted in the subcontract and incorporated in the surety bond can be taken to discharge the surety, *see Winston Corp. v. Continental Casualty Co.*, 508 F.2d 1298, 1301 (6th Cir.), *cert. denied*, 423 U.S. 914, 96 S.Ct. 218, 46 L.Ed.2d 142 (1975) (applying Georgia law), and contends that a surety bond which also includes additional language granting the right to "modify" must be taken to mean the release of the subcontractor if the contract is not to be redundant.

The bulk of Amwest's response emphasizes the difference between "modify" and "release," without addressing Hardaway's contention about avoiding redundancy in construing contract language. Amwest's only true counter-argument is that, even assuming "modify" includes "release," the surety is obligated to secure only the subcontractor's performance of the agreement *as modified* (i.e., as released). "To hold otherwise would be to mandate that the obligee could change the principal's Subcontract (say, by deleting a north-south road and adding one running east to west), but that the surety's obligation would still

be to perform the Subcontract according to its original terms...." (Amwest Br. at 25). Thus, once B & F's obligations are released, there is nothing left for Amwest to secure. However, the example Amwest uses to illustrate this argument shows why it fails to rebut Hardaway's contention. According to Hardaway, such a change is already encompassed in the subcontract term allowing Hardaway to alter B & F's performance. Because Amwest has consented to those changes in advance, the changes may also affect Amwest's obligation to secure B & F's performance. Changes that release B & F do not.

■ The best argument that the district court's construction does not create a redundant contract lies in the *Winston*-based premise of Hardaway's position: a modification permitted in the subcontract (and incorporated into the surety bond) does not discharge the surety. This holding of *Winston* was concededly an extrapolation by the Sixth Circuit of the majority rule in order to ascertain unclear Georgia law. 508 F.2d at 1304 (employing majority rule that compensated sureties do not benefit from canon of *stricti juris*). *But cf. Houston Gen. Ins. Co. v. Brock Constr. Co.*, 241 Ga. 460, 246 S.E.2d 316, 318–19 (1978) (holding that *stricti juris* does not apply to compensated sureties, but unambiguous contracts must not be extended by interpretation). Thus, the parties to the surety agreement might well have intended merely to state in clear terms a meaning that otherwise could have been subject to dispute, to wit, that modifications would not release the surety. Hardaway concedes that the court should not read terms into a contract unless "there arises from the language of the contract itself and the circumstances under which it was entered into, an inference that it is *absolutely necessary* to introduce the term to effectuate the intention of the parties." *Higginbottom v. Thiele Kaolin Co.*, 251 Ga. 148, 304 S.E.2d 365, 366 (1983) (emphasis added) (quoting 11 Samuel Williston, *A Treatise on the Law of Contracts* § 1295 (Walter H.E. Jaeger ed., 3d ed. 1967)). Since "modify" does not include "release" in common usage and the use of the term "modify"

does not create a redundant contract, we agree with the district court that Amwest did not consent to Hardaway's release of B & F.

## B. IS A SURETY'S CONSENT TO THE PRINCIPAL DEBTOR'S RELEASE

### REQUIRED FOR A SURETY TO REMAIN LIABLE?

Because we agree with the district court that Amwest did not consent to Hardaway's discharge of B & F, we must address the issue of whether a surety's consent to discharge is required for the surety to remain liable after the discharge of a principal debtor. There is confusion in the decisions of the Georgia courts regarding this issue. We therefore defer our decision in this case pending certification of the question to the Supreme Court of Georgia. *See Middle Ga. Neurological Specialists, P.C. v. Southwestern Life Ins. Co.*, 946 F.2d 776 (11th Cir.1991).

We submit the following for consideration by the Supreme Court of Georgia.

### CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF GEORGIA, PURSUANT TO ARTICLE VI, SECTION VI, PARAGRAPH IV OF THE GEORGIA CONSTITUTION.

TO THE SUPREME COURT OF GEORGIA AND THE HONORABLE JUSTICES THEREOF:

### I. *Style of the Case*

The style of the case in which this certification is made is as follows: The Hardaway Company, Plaintiff/Appellant v. Amwest Surety Insurance Company, Defendant/Appellee (D.C. Docket No. CV–491–026). This case is assigned number 92–8153 in the United States Court of Appeals for the Eleventh Circuit, on appeal from the United States District Court for the Southern District of Georgia.

## II. *Reasons for Certification*

In its motion for summary judgment, Amwest argued that Georgia law requires a surety to consent to the perpetuation of claims against it when the obligations of the bonded principal are discharged. Hardaway responded that the purported "release" is a mere covenant not to sue B & F.

The district court accepted Amwest's position that Georgia law prohibits even the express preservation of a surety's liability without its consent when the creditor purports to release the liability of the principal debtor. Both Amwest and the district court rely on *Hendricks v. Davis,* 196 Ga. App. 286, 395 S.E.2d 632 (1990), *cert. denied* (Ga. Sept. 4, 1990), where the court held that

> [g]enerally, discharge of the principal debtor also discharges the surety. OCGA § 10–7–2; *Samples v. Kamp–N– Go Systems,* 139 Ga.App. 324, 228 S.E.2d 360 (1976). If a creditor reserves all rights against a surety in discharging a principal debtor, *and* that discharge of the principal is done with the knowledge and consent of the surety, discharge of the surety does not necessarily follow. See *Schwitzerlet–Seigler Co. v. C[itizens] and S[outhern] Bank,* 155 Ga. 740, 118 S.E. 365 (1923). However, the evidence was uncontroverted that Davis [the surety] was unaware of the settlement . . . and that he had never consented to it.

395 S.E.2d at 633 (emphasis added). The court therefore held the surety not liable. This holding by the Georgia Court of Appeals, however, appears to be contrary to the Supreme Court of Georgia's language in *Schwitzerlet–Seigler.*

> The general rule undoubtedly is that the release of the principal debtor, without the consent of the surety, releases the surety, *unless* the right to go against the surety is reserved in the instrument of release, or it appears from the whole transaction that the surety should remain bound. So, where the creditor reserves all rights against the surety, the latter is not discharged by release of the principal debtor by the creditor. . . . Un-

der such circumstances the release will not discharge the surety. . . . Thus, giving time or accepting a composition does not discharge the surety, if all remedies against him are reserved.

*Schwitzerlet–Seigler,* 118 S.E. at 367–68 (emphasis added) (citations omitted). The surety in *Schwitzerlet–Seigler* had in fact consented to the release, and thus the court did not actually impose liability upon an unconsenting surety. This language therefore was dictum; nevertheless, to the extent the *Hendricks* court relied upon *Schwitzerlet–Seigler,* it appears to have misconstrued the language of that case.

*Hendricks* failed to note *Brown v. Ayer,* 24 Ga. 288 (1858), *cited with approval in Schwitzerlet–Seigler,* 118 S.E. at 367. *Brown* was one of the precursors of *Schwitzerlet–Seigler* and suggests the same rule. "The plaintiff knew that Ayer was principal, and that Bates was surety. He ought to have known, that to release [Ayer] absolutely, without reserving in the instrument of release the right to go against the security, the security would be also discharged." *Brown,* 24 Ga. at 295. This statement was essential to the court's holding that the surety had been discharged and seems to suggest that an express reservation of rights would have been sufficient alone to preserve the surety's liability, for there was no allegation that the surety had consented. Defendant Bates "was not present" when the release was signed. 24 Ga. at 295. *Brown* has not been overruled by the Supreme Court of Georgia.

*Hendricks* also cited *Overcash v. First National Bank,* 115 Ga.App. 499, 155 S.E.2d 32 (1967). Relying on a specific statutory provision that the release of one's co-surety also discharges the surety, the *Overcash* court held that such a release would not discharge the surety if it had consented. 155 S.E.2d at 34 (citing Ga. Code 1933 § 103–201, recodified at O.C.G.A. § 10–7–20). *Hendricks* could have been decided solely on the *Overcash* ground that the creditor had released a co-surety; thus, the *Hendricks* holding that release of the principal also discharged the

surety was at best an alternative ground for decision.

Hardaway argues that the practical reasons underlying the rule of *Overcash* and section 10–7–20 of the Georgia Code do not apply to the creditor's release of the principal and therefore the release should not discharge Amwest. When a co-surety is released, the remaining surety is prejudiced because he bears the full burden of liability. When a surety is *not* prejudiced by the release of a co-surety, the Georgia Court of Appeals has held that the surety is not discharged. *Holcombe v. Eng,* 163 Ga. App. 343, 294 S.E.2d 568 (1982) (holding that release caused no prejudice because guaranty agreement had already allocated liability among co-sureties). Amwest was not prejudiced by the release of B & F because it retained its right to seek indemnification from B & F. Restatement of Security § 122 cmt. d (1941); 10 Williston, *supra,* § 1230. To the extent B & F cannot pay such indemnification, Amwest has suffered the very loss it agreed to accept by acting as surety. *Cf. Gholson v. Savin,* 137 Ohio St. 551, 31 N.E.2d 858, 863 (1941) (adopting minority position that reservation of surety liability is effective only if the surety's rights against the principal debtor are also expressly preserved).

Amwest relies upon *Fricks v. Rome Mercantile Co.,* 49 Ga.App. 431, 175 S.E. 807 (1934), where the court held that a creditor who sues both the principal debtor and the surety, but accepts judgment against the surety alone, thereby releases the principal. With somewhat circular logic, the court concluded that this release of the principal

had the effect of discharging the surety and, therefore, the creditor's judgment against the surety was due to be reversed. However, the same argument was rejected in *McAllister v. People,* 28 Colo. 156, 63 P. 308, 308 (1900), *cited with approval in Schwitzerlet–Seigler,* 118 S.E. at 367.

The longstanding law of Georgia casts the obligations of a surety as being "accessory" to that of his principal. *Brown v. Ayer,* 24 Ga. at 291; *see also* O.C.G.A. § 10–7–2. "[I]f the latter from any cause becomes extinct, the former shall cease of course, even though it is in judgment." O.C.G.A. § 10–7–2 (recodifying *inter alia* Ga.Code 1868 § 2121). Hardaway also presses the seemingly inconsistent *Schwitzerlet–Seigler* language as the law of Georgia. This language comports with *Brown v. Ayer* and the law of almost all other states,[2] and matches exactly the rule put forward by the Restatement of Security section 122 as well as section 1230 of Williston's treatise. These two principles are reconciled in the official commentary to the Restatement of Security section 122, which notes that "[w]here the creditor releases the principal but reserves his rights against the surety, this is construed as a covenant not to sue the principal." Restatement of Security § 122 cmt. d. *See generally* Annotation, *Creditor's Reservation of Rights Against Surety in Releasing or Extending Time to Principal Debtor,* 139 A.L.R. 85 (1942). In analogous circumstances, Georgia courts have construed contracts purporting to "release" claims as being mere covenants not to sue, which do not discharge joint and several co-obligors.

**2.** *See, e.g., Warner Lambert Pharmaceutical Co. v. Sylk,* 348 F.Supp. 1039, 1044–45 (E.D.Pa. 1971), *aff'd without opinion,* 475 F.2d 1398 (3d Cir.1973) (Pennsylvania law); *Prout v. Branch Bank at Decatur,* 6 Ala. 309, 312–13 (1844); *McAllister v. People,* 28 Colo. 156, 63 P. 308, 308 (1900); *Rockville Nat'l Bank v. Holt,* 58 Conn. 526, 20 A. 669 (1890); *Knight v. Cheek,* 369 A.2d 601, 603 (D.C.1977); *McGill v. Idaho Bank & Trust Co.,* 102 Idaho 494, 632 P.2d 683, 686 (1981); *City Nat'l Bank & Trust Co. v. Burnham,* 297 Ill.App. 211, 17 N.E.2d 505 (1938); *Hendershot v. Charleston Nat'l Bank,* 563 N.E.2d 546 (Ind.1990); *J.M. Robinson, Norton & Co. v. Meyers,* 105 S.W. 428 (Ky.1907); *Bradford v. Prescott,* 85 Me. 482, 27 A. 461 (1893); *Clagett v.* *Salmon,* 5 G. & J. 314 (Md.1833); *Karcher v. Burbank,* 303 Mass. 303, 21 N.E.2d 542, 545 (1939); *O'Donnell Shoe Co. v. Benson Co-op. Mercantile Co.,* 175 Minn. 382, 221 N.W. 426, 427 (1928); *Boatmen's Sav. Bank v. Johnson,* 24 Mo.App. 316 (1887); *Standard Brands, Inc. v. Straile,* 23 A.D.2d 363, 260 N.Y.S.2d 913, 917 (1965); *Hickory Springs Mfg. Co. v. Evans,* 541 S.W.2d 97, 99 (Tenn.1976); *Moore v. Dark,* 52 Wash.2d 555, 327 P.2d 429, 431–32 (1958); *Continental Bank & Trust Co. v. Akwa,* 58 Wis.2d 376, 206 N.W.2d 174, 183–84 (1973). *But see Equitable Sav. & Loan Ass'n v. Jones,* 268 Or. 487, 522 P.2d 217, 219–20 (1974) (reservation clause is ineffective without surety's consent).

1401

*E.g., Weems v. Freeman,* 234 Ga. 575, 216 S.E.2d 774 (1975); *Georgia R.R. Bank & Trust Co. v. Griffith,* 176 Ga.App. 198, 335 S.E.2d 417, 418–19 (1985).

While we are bound to follow the decisions of a state's highest court when applying state law in a diversity case, *see Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967), we are reluctant to do so in this case, without first hearing from the Supreme Court of Georgia, because the decisions are extremely old and *Hendricks,* a 1990 case coming out of the Georgia Court of Appeals, directly conflicts with the older Supreme Court of Georgia cases. Since Georgia law seems to be in conflict on the issue of whether a surety's consent to discharge is required for it to remain liable after the discharge of a principal debtor and the resolution of this issue is likely to affect numerous debtors, principals, and surety companies, we respectfully certify the following question of law to the Supreme Court of Georgia and the Honorable Justices of that Court.

### III. *Question for Certification*

WHETHER A CREDITOR'S AGREEMENT TO RELEASE A PRINCIPAL DEBTOR, WHICH CONTAINS AN EXPRESS RESERVATION OF RIGHTS AGAINST THE SURETY, IS A RELEASE OF THE SURETY'S LIABILITY TO THE CREDITOR ON THE SURETY BOND OR A MERE COVENANT BY THE CREDITOR NOT TO SUE THE PRINCIPAL DEBTOR WHEN THE SURETY HAS NOT CONSENTED TO THE CREDITOR'S RELEASE OF THE PRINCIPAL DEBTOR?

Our statement of the question is not designed to limit the inquiry of the Supreme Court of Georgia. Instead, the Supreme Court has the latitude to consider the problems and issues involved in this case as it perceives them to be. *Martinez v. Rodriquez,* 394 F.2d 156, 159 n. 6 (5th Cir.1968). To assist the Supreme Court, the entire record in this case and copies of the parties' briefs are transmitted herewith.

QUESTION CERTIFIED.